IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Andrea Bloodworth, | ) | Civil Action No. 4:12-cv-2007-TLW |
| | ) | Criminal No. 4:06-cr-00337-TLW |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| The United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter comes before the Court for consideration of the *pro se* Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255 filed by the Petitioner, Andrea Bloodworth ("Petitioner"), (Doc. #210) and the supplemental petition filed on August 29, 2013, (Doc. #220). Petitioner entered a conditional plea agreement on February 22, 2008, pleading guilty to Count 1 of the Indictment, which charged that Petitioner, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, a firearm and ammunition, all of which had been shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. § 922(g)(1), 924(a)(2), and 924(e). (Docs. #13; 145). Petitioner's written plea agreement included a Federal Rule of Criminal Procedure 11(c)(1)(C) stipulated sentence of 17 years imprisonment, (Doc. #145), which the district court imposed, (Doc. #179). Petitioner filed a notice of intent to appeal sentence on March 31, 2009. (Doc. #172). Petitioner filed his appeal with the Fourth Circuit Court of Appeals and on February 22, 2011, the Fourth Circuit affirmed the judgment of the district court. (Doc. #196). The Supreme Court denied Petitioner's petition for writ of certiorari on October 3, 2011. (Id.).

Petitioner filed the present Section 2255 motion on July 18, 2012, alleging ineffective assistance of all three of his counsel. (Doc. #200). Petitioner's initial appointed counsel, William F. Nettles, IV ("Nettles") was appointed on March 17, 2006. (Doc. #7). Nettles made a motion to be relieved as counsel on November 29, 2006, (Doc. #60), and the Court appointed attorney John M. Ervin, III ("Ervin") to represent Petitioner on December 11, 2006, (Doc. #61). Petitioner made a motion for Ervin to be replaced on June 25, 2007, (Doc. #88), and the Court appointed Kathy Jane Price Elmore ("Elmore") in Ervin's place on July 13, 2007. Nettles submitted an affidavit in response to Petitioner's ineffective assistance of counsel claims. (Doc. #209). Ervin and Elmore did not file an affidavit. On August 24, 2012, the United States of America ("Government") filed a response in opposition to all grounds and moved for summary judgment. (Doc. #210). On September 24, 2012, Petitioner filed a timely reply in opposition to the Government's motion. (Doc. #214). Thereafter, on July 22, 2013, the Petitioner filed a Response in Support/Motion to Supplement or Amend his §2255 petition. (Doc. #215). The Court entered a text order granting the motion to supplement or amend and incorporating the additional issues set forth by the Petitioner into the original §2255 petition. (Doc. #217). On August 29, 2013, the Government filed a Response in Opposition to the Motion to Amend and a Renewed/Amended Motion for Summary Judgment. (Docs. #219, 220). Petitioner filed a Motion for Extension of Time to respond to the Government's amended summary judgment motion on September 26, 2013, which the Court granted by text order on October 3, 2013. (Docs. #223, 224). The Petitioner filed a timely Response in Opposition to the Government's amended summary judgment motion on October 24, 2013. (Doc. #226).  The matter is now ripe for decision.

## 28 U.S.C. § 2255

United States Code, Title 28, Section 2255 provides that a prisoner in custody under sentence of a federal court may file a motion in the court that imposed the sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which the petitioner may claim such relief: (1) that the court imposed the sentence in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. "Generally, 28 U.S.C. § 2255 requires [a] petitioner to prove by a preponderance of the evidence that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law.'" Leano v. United States, 334 F. Supp. 2d 885, 890 (D.S.C. 2004) (quoting 28 U.S.C. § 2255(a)). In Leano, the district court noted that this is "the proof needed to allege a constitutional error," and that "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" Leano, 334 F. Supp. 2d at 890 (quoting United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999)). In deciding a 28 U.S.C. § 2255 motion, this Court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing petitioner's *pro se* motion, and finds that no hearing is necessary.

## **STANDARD OF REVIEW**

The Government filed a response and moved for summary judgment as to all grounds raised by Petitioner. (Doc. #210).  In examining a motion for summary judgment, the Court must determine whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56. Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Once the moving party meets its responsibilities by making and supporting a motion for summary judgment under Rule 56, the non-moving party must produce "specific facts showing that there is a genuine issue for trial," rather than rest upon bald assertions contained in the pleadings. See Celotex, 477 U.S. at 323. Thus, the plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which element that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue of material fact" because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which the non-moving party has the burden of proof. Id. at 322-23.

## FACTS

The facts of Petitioner's case are straightforward. Officers with the Myrtle Beach Police Department executed a traffic stop on the Petitioner's car because they believed the tag was altered. (Doc. #210-2 at 4). The officers requested and received Petitioner's driver's license and ran the information found on the license. (Id. at 4-5). While the license displayed the name Andre Worth, officers stated the signature line on the license was signed "Andrea Bloodworth." (Id. at 4, 36.) Officers further stated that when dispatch ran the name Andre Worth through the NCIC database, the database revealed Andre Worth was an alias for Andrea Bloodworth. (Id. at 25). Andrea Bloodworth's license came back as suspended and the officers arrested Petitioner for driving under suspension. (See id. at 25-26). The officers then inventoried Petitioner's car before having it towed, discovering marijuana, pills, crack cocaine, and a firearm. (Id. at 42.) Petitioner, however, was a felon and thus barred from possessing a firearm. (Doc. #210-1 at 6).

## ANALYSIS OF CLAIMS: INITIAL §2255 PETITION

In his initial §2255 petition, (Doc. #200), Petitioner alleges ineffective assistance by his counsel and provides a number of factual allegations in support. To prevail on a claim of ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficiencies prejudiced the Petitioner's defense to the extent that he was denied a fair trial. Strickland v. Washington, 466 U.S. 668, 687-692 (1984). A petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance…." Id. at 689. The court may bypass the first inquiry – whether counsel's performance was deficient – if it can more easily dispose of the claim for lack of prejudice. Id. at 697. For the reasons outlined below, none of the Petitioner's allegations are meritorious.

Petitioner alleges six arguments in support of his ineffective assistance of counsel claim. First, Petitioner asserts that counsel Nettles was ineffective in failing to offer Petitioner's allegedly altered tags into evidence at the suppression hearing. (Doc. #200 at 4). Second, Petitioner alleges that Nettles was ineffective in failing to investigate and challenge at the suppression hearing an officer's search of Petitioner's glove box. (Id. at 5). Petitioner further asserts that Nettles should have offered into evidence Petitioner's license, audio from the stop, and a "Cad Report." (Id. at 21-25). Third, Petitioner asserts his car was illegally towed and inventoried, and that Nettles, Ervin, and Elmore were ineffective in failing to investigate the towing policies. (Id. at 7, 25-30). Petitioner further asserts that Elmore was ineffective in failing to investigate the altered tags and raise issues such as the Cad report and Audio Tape. (Id. at 28-29). Fourth, Petitioner asserts Elmore was ineffective in failing to investigate whether Petitioner's prior breaking and entering convictions qualified as predicates for ACCA purposes. (Id. at 8). Fifth, Petitioner asserts that Elmore was ineffective in failing to investigate whether Simmons disqualifies his prior convictions as predicates under the Armed Career Criminal Act. (Id. at 33-36). And sixth, Petitioner asserts that Nettles was ineffective in failing to preserve for appellate review the issue of whether this Court abused its discretion in permitting the Government to admit Petitioner's record to impeach Petitioner's testimony at the suppression hearing. (Id. at 36-40).

**1. Counsel's alleged failure to introduce tags into evidence at suppression hearing**

Petitioner first asserts that counsel Nettles was ineffective in failing to offer Petitioner's allegedly altered tags into evidence at the suppression hearing. (Doc. #200 at 4). Petitioner was arrested after a traffic stop for altered tags led officers to discover illegal substances in Petitioner's car. (See Doc. #210-2). According to the Petitioner, had Nettles requested admission of the tags into evidence, the Court would have seen that the tags were unaltered and that the officers had stopped Petitioner illegally. Additionally, Petitioner asserts that Nettles and the Government committed a Brady violation. (Doc. #200 at 21).

These allegations have no merit. Petitioner offers no evidence to indicate that the initial stop was illegal, that Nettles' conduct regarding the tags was objectively unreasonable, and that Nettles' conduct prejudiced the Petitioner. Moreover, the record and Petitioner's own testimony supports the legality of the traffic stop and thus bolsters that Nettles' did not act in an objectively unreasonable or prejudicial manner. While the Petitioner asserted that he did not alter the tags himself, Petitioner did not contest that the tags had expired prior to the date Petitioner was stopped. (Doc. #210-2 at 62). At the suppression hearing, Petitioner confirmed the date he bought the car and further confirmed that he was aware that paper tags are only good in South Carolina for 45 days. Petitioner next confirmed that the 45 days would have been up in November, 2005, prior to the date Petitioner was pulled over. (See id. at 3, 83). Furthermore, Petitioner volunteered at the suppression hearing that he did not argue with the officer when the officer pointed out the tags during the stop. (Id. at 56). In addition, both officers testified that the tags were clearly altered, and the Court found that there was a sufficient basis to give officers the authority to stop the vehicle. (Id. at 4, 32, 101).

Moreover, in his affidavit, Nettles states that while he does not specifically recall the events in his case, it is his practice to prepare suppression motions only after "getting a thorough understanding of my client's version of events." (Doc. #209 at 3). Thus, he states that after he reviewed the suppression motion in this case, it did not "appear that we sought to claim at that time that the tag was not altered." Id. Finally, Nettles provided records indicating that the Petitioner was terminated from his job at the automobile dealership in September, 2005 for using a dealer tag without permission. (Docs. #209 at 2, 209-1). Thus, Nettles' affidavit further indicates that his performance neither fell below an objective standard of reasonableness nor prejudiced the Petitioner.

After reviewing the record in this case, the Court concludes that Petitioner has failed to show Nettles' performed below an objective standard of reasonableness or that his performance prejudiced the Petitioner's defense. As noted above, the Petitioner's own testimony – in which he conceded that the tags expired in November, 2005, before the December 2005 traffic stop – supports this conclusion. The finding is further bolstered by defense counsel Nettles' affidavit and the evidence revealing that the tag *was* altered or expired. And finally, the finding is supported by the Court's conclusion that the legality of the stop properly was decided, to the extent it was at issue.  Thus, the Petitioner has failed to show a reasonable probability that, except for Nettles performance, the stop would have been found illegal and that the proceeding would have been different. There is no persuasive evidence to conclude that the tags were not altered or that the officers lacked probable cause for the stop. As a result, Petitioner's claim of ineffective assistance of counsel based on these facts is without merit.

**2. Counsel's alleged failure to investigate and challenge glove box search**

Petitioner next alleges that Nettles was ineffective for failing to investigate and challenge a search of Petitioner's glove box. (Doc. #200 at 5). After he was stopped, Petitioner initially gave officers a driver's license under the name "Andre Worth," a name Petitioner admits was an alias. (See id. at 22). The officers testified that while the driver's license was officially made to "Andre Worth," the Petitioner had signed the signature line "Andrea Bloodworth." (See Doc. #210-2 at 36). Petitioner asserts, on the other hand, that the officers discovered Petitioner's real name during an illegal search of the Petitioner's glove box. Specifically, he asserts that while one officer was writing Petitioner a citation, the other officer removed a second identification card from Petitioner's locked glove box without consent or probable cause for a search. (Doc. #200 at 22). The card from the glove box contained Petitioner's real name, Andrea Bloodworth. (Id.) Thus, Petitioner asserts that the officers discovered the alias during the alleged illegal search of the glove box rather than from the police dispatcher prior to the glove box search. (See id. at 21-25). Thus, petitioner contends that Nettles should have pursued admission of the original driver's license, audio recording from the stop, and a "Cad report" as evidence to this effect. (Id. at 22). Petitioner concludes that he is "suffering time in prison because of counsel's error." (Id. at 24).

These allegations are without merit. Contrary to the Petitioner's contentions, Nettles did raise the issue of the glove box search at the suppression hearing. (Doc. 210-2 at 72-78). After Nettles presented Petitioner's case for suppression, the Government presented the facts supporting its contention that the officers discovered Petitioner's identity independent of and prior to searching the glove box. (Id. at 78-88). The Court then found that the question came down to credibility. (Id. at p. 101). After weighing the testimony, the Court found that the testimony from the officers was "credible and more credible than the testimony of the

[Petitioner] in this case…." (Id. at 103). To the extent Petitioner claims that Nettles should have pursued introduction of the original driver's license, the Government noted that it did not bring the license to the suppression hearing because it did not believe that the license was in issue; however, the Government asserted that the license was available and that it would be available before trial. (Id. at 81). Moreover, because the officers asserted that they first learned of Petitioner's real name from the dispatcher rather than from the signature line of the original driver's license, the license was at best offered only very limited evidentiary value to the issue of the glove box search; thus, Nettles' did not act unreasonably in deciding not to pursue entry of the license into evidence.

Finally, Nettles did not act unreasonably in failing to introduce the audio recording and Cad report into evidence. As the Fourth Circuit has already addressed, the audio recording was destroyed according to department policies before it could be entered into evidence, and the Petitioner has failed to show any evidence in the Cad report that indicates the officers did not learn of Petitioner's identity from dispatch prior to searching the glove box. (Doc. #196). Thus, not only does Petitioner fail to show that Nettles performed in an objectively unreasonable manner, but he also fails to show prejudice.

In summary, after reviewing the record in this case, the Court concludes that Petitioner has failed to show Nettles' performed below an objective standard of reasonableness or that his performance prejudiced the Petitioner's defense.

## 3. Counsel's alleged failure to investigate whether Petitioner's vehicle was illegally towed and inventoried

Third, Petitioner asserts that his car was illegally towed and inventoried, and that Nettles, Ervin, and Elmore were ineffective for failing to investigate the towing policies. Specifically,

Petitioner asserts that under the Myrtle Beach Police Department's policies and procedures, "police have no right to tow an individual vehicle or impound it unless: (one) it be impeding traffic, (two) the vehicle must be a public nuisance or any type of hazard." (Doc. #200 at 25). Petitioner further asserts that he was in custody when the officers searched his car and that the policy forbids a search of an individual's car while the individual is not present. In addition, Petitioner asserts that Elmore was ineffective in failing to move for a second suppression hearing, in failing to investigate the altered tags, and in failing to raise issues such as the Cad report and Audio Tape.

Upon reviewing the evidence, this Court concludes that Petitioner's counsel acted in an objectively reasonable manner regarding the towing and inventory search conducted in this case. As even the Petitioner notes, the police policies permit a car to be towed if it is an impediment, nuisance, or hazard. Petitioner does not argue or present evidence to show that his car was not an impediment, nuisance, or hazard after the Petitioner was arrested. To the contrary, he cites an ATF officer's testimony stating that the vehicle was towed because it *was* an impediment. (Doc. #200 at 2). Moreover, the record reflects that Petitioner was pulled over to the side of a road near an intersection and Petitioner was the only occupant of the vehicle, which shows that Petitioner's car would have become an impediment, nuisance, or hazard had it remained where it was pulled over. (See doc. #210-2 at 4, 17). Petitioner presents no evidence that his car was towed in violation of the Myrtle Beach Police Department policies and procedures. To the contrary, as noted above, the evidence shows the towing *conformed* to the policies in place. Thus, in this regard, Petitioner fails to show that his attorney performed in an objectively unreasonable manner or prejudiced Petitioner's defense.

Regarding the inventory, Petitioner asserts that the policies in place prohibited searches while an individual is not in the presence of his vehicle. Petitioner fails to provide the text of the referenced policy and furthermore, a long line of case law supports the right of officers to conduct inventory searches, even outside the defendant's presence. (See Doc. #200 at 26; Colorado v. Bertine, 479 U.S. 367, 374 n. 6, (1987); United States v. Murphy, 552 F.3d 405, 412 (4th Cir. 2009); United States v. Banks, 482 F.3d 733, 739 (4th Cir. 2007) ("A proper inventory search is merely an incidental administrative step following arrest and preceding incarceration, conducted to protect the arrestee from theft of his possessions, to protect the police from false accusations of theft, and to remove dangerous items from the arrestee prior to his jailing."); United States v. Brown, 787 F.2d 929, 932 (4th Cir. 1986) ("If the vehicle is in lawful custody, the police may inventory the vehicle, if such inventories are routine and conducted pursuant to the standard police procedures, so long as the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against the owner."). Officers inventoried the car because it was going to be towed, and there is no indication that the purpose of the inventory was for any improper purpose. (See doc. #210-2 at 6). Furthermore, the record reflects that the inventory search in this case was routine and conducted pursuant to the standard police procedures because the officers searched the vehicle pursuant to a tow sheet. (Doc. #200 at 41). Thus, the record reflects that a challenge to the inventory would have been meritless. As a result, Nettles did not act in an objectively unreasonable or prejudicial manner in deciding not to challenge the inventory. (See doc. #210-2 at 89, 91).

Finally, regarding Petitioner's assertion that Elmore was ineffective for failing to move for a second suppression hearing, for failing to investigate the altered tags, and for failing to raise issues such as the Cad report and Audio Tape, Petitioner's allegations are without merit. The

Petitioner acknowledged at the plea hearing that he was satisfied with Elmore's conduct. (See doc. #186 at 5). In response to the Court's questions at the plea hearing, Petitioner indicated he had sufficient time to consult with his attorney, that he was fully satisfied with her performance, and that there was nothing else he wanted her to do for him. (Id.). In light of these statements and the stipulated conditional plea agreement Elmore helped negotiate for and with the Petitioner, Petitioner's assertion that he is now dissatisfied with his attorney is without any legal or factual merit. Moreover, because the issue of suppression of the evidence from the vehicle search had already been addressed, Elmore's conduct in failing to move for a second suppression hearing was not objectively unreasonable. Additionally, the Fourth Circuit affirmed that the Petitioner was entitled no relief on the basis of the audio tape, further showing that Elmore's conduct was not objectively unreasonable or prejudicial. (See doc. #196). In light of Petitioner's representations at the plea hearing, the Fourth Circuit opinion, and the record before the Court, Petitioner's claim of ineffective assistance of counsel based on these facts is without merit.

### 4. Elmore's alleged failure to investigate whether Petitioner's prior breaking and entering convictions qualified as predicates for ACCA purposes

Fourth, Petitioner alleges his counsel was ineffective for failing to investigate whether his prior breaking and entering convictions counted as predicates for the Armed Career Criminal Act ("ACCA") enhancement. (Doc. #200 at 31). Specifically, Petitioner contends that he was sentenced as a juvenile under North Carolina's Youthful Offender Act for his breaking and entering convictions and that therefore, the convictions do not count as predicates. (Id.)

Petitioner's allegations again fail to provide any basis for relief. The fact that the Petitioner was sentenced under North Carolina's Youthful Offender Act does not change the nature of the convictions; they are still classified as "violent felonies" under the ACCA. See

United States v. Hunter, 12-5035, 2013 WL 5996695 (4th Cir. Nov. 13, 2013); Barrentine v. United States, 4:09-CR-953-RBH, 2013 WL 2635730 (D.S.C. June 12, 2013) (citing United States v. Williams, 508 F.3d 724, 726-30 (4th Cir. 2007). Although the Petitioner was 17 at the time of the breaking and entering convictions, the PSR reflects that the convictions were adult convictions and that the Petitioner had no juvenile convictions. (Doc. #170 at 6-7). As a result, any objections based on the Petitioner's juvenile status would have been meritless, and thus Petitioner fails to show that Elmore's performance was unreasonable or prejudicial. The Court also notes that Petitioner was asked, separately from his counsel, whether he had other objections to the Presentence Report. The Court specifically advised the Petitioner that the sentencing hearing was "the time to make objections." Nonetheless, Petitioner represented to the Court that he had no other objections to the Presentence Report. (Doc. #183 at 33-34).

The Court notes that Petitioner's claim fails for two additional reasons. First, even excluding the two breaking and entering offenses, Petitioner has at least three additional prior predicate convictions and would thus still qualify as an armed career offender. (See infra p. 21; doc. #170 at 7-16). Petitioner therefore fails to show conduct by defense counsel Elmore that was objectively unreasonable and prejudicial.

Second, Petitioner's 204 month sentence was imposed pursuant to his Rule 11(c)(1)(C) stipulation in the plea agreement, not pursuant to the guidelines. (Doc. #145; United States v. Powell, 347 F. App'x 963, 965 (4th Cir. 2009) ("A sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement is contractual and not based upon the guidelines.") (citing United States v. Cieslowski, 410 F.3d 353, 364 (7th Cir. 2005)). According to the presentence investigation report, the guideline range in Petitioner's case was 210-262 months. (Doc. #170-1). However, pursuant to the stipulated plea agreement, Petitioner was sentenced to 204 months. As

a result, the record reflects that the ACCA enhancement was not relevant to the Petitioner's sentence. The Rule 11(c)(1)(C) sentence fell below the calculated range. Thus, Petitioner's claim is further without merit.

In summary, Petitioner fails to show that Elmore's performance in regard to his first two breaking and entering convictions was unreasonable or prejudicial. Thus, Petitioner's claims based on his juvenile status are without merit.

## 5. Elmore's alleged failure to investigate whether prior convictions were inapplicable for ACCA purposes under Simmons and other case law

Fifth, Petitioner contends that had Elmore investigated Petitioner's prior convictions, she would have discovered that Petitioner was entitled to relief under United States v. Thompson, 826 F. Supp. 2d 863 (E.D.N.C. 2011) vacated, 480 F. App'x 201 (4th Cir. 2012), United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), and United States v. Rivers, 595 F.3d 558 (4th Cir. 2010). (Doc. #200 at 33). Petitioner asserts that under Thompson, a decision which relied on Simmons, his (1) 1986 Common Law Robbery conviction, (2) 1991 Assault-Serious Injury conviction, and (3) 1993 Breaking or Entering conviction do not qualify as predicates under the ACCA. (Doc. #200 at 34-35). Specifically, Petitioner asserts that he did not actually serve a custodial sentence of more than a year for any of these convictions and thus that they cannot count as violent felony predicates for ACCA purposes. (Id.). In addition, Petitioner asserts that under Rivers, his 1993 Failure to Stop for Blue Lights does not qualify as an ACCA predicate. Id. at 47.

Petitioner is not entitled to relief on these claims. The first case Petitioner relies on for relief, United States v. Thompson, 826 F. Supp. 2d 863 (E.D.N.C. 2011), was overruled. See United States v. Thompson, 480 F. App'x 201 (4th Cir. 2012). In the overruled case, the North

Carolina district court relied on Simmons to hold that because the defendant received a five year suspended sentence with custodial sentences for less than a year, the convictions did not count as predicates for ACCA purposes. In overruling the North Carolina district court, the Fourth Circuit determined that the district court misapplied Simmons. Specifically, the Fourth Circuit held that "in evaluating whether a defendant's prior state conviction qualifies as a felony under the ACCA, the actual sentence imposed is irrelevant; rather, the relevant inquiry is whether the actual defendant was subject to a potential sentence of greater than one year of imprisonment." See Thompson, 480 F. App'x 201 (4th Cir. 2012) (overruling United States v. Thompson, 826 F. Supp. 2d 863 (E.D.N.C. 2011)). Thus, because the potential sentences in Thompson were greater than a year, the Fourth Circuit held that the convictions qualified as predicate convictions for ACCA purposes. Id.

Here, two of the challenged prior convictions were, as is readily available from the face of the Presentence Investigation Report, subject to a potential sentence of greater than one year. (See doc. #170). For his 1986 Common Law Robbery conviction, Petitioner received a ten year custody sentence, suspended to three years probation, and for his 1991 Assault-Serious Injury conviction, Petitioner received a sentence of 2 years custody, suspended to 18 months probation. (Id. at 8, 9). Thus, Petitioner's reliance on Thompson and Simmons in regards to these two convictions is misplaced. While the maximum potential sentence for the third challenged prior conviction (the 1993 Breaking or Entering conviction) is not indicated on the presentence report, the conviction is irrelevant to Petitioner's ACCA status because his record contains sufficient remaining predicates to place Petitioner under ACCA status without it. (See infra p. 21)

Petitioner's claim for relief based on Rivers is also without merit. Petitioner correctly states that under Rivers, Failure to Stop for a Blue Light is no longer considered a predicate for

16

ACCA purposes. However, there is no indication that Probation relied on the Failure to Stop for a Blue Light conviction as a predicate and, more importantly, Petitioner qualifies for the enhancement even without the Failure to Stop for a Blue Light conviction. Thus, his reliance on Rivers is misplaced.

Finally, the Court again notes that Petitioner's ACCA status was irrelevant to the sentence imposed because Petitioner entered a stipulated 11(c)(1)(C) sentence. Petitioner therefore fails to show conduct by defense counsel Elmore that was objectively unreasonable and prejudicial and Petitioner's claims on these grounds is without merit.

In summary, Petitioner fails to show that Elmore's performance in regard to Thompson, Simmons, and Rivers was unreasonable or prejudicial. Thus, Petitioner's claims based on these cases are without merit.

## 6. Nettle's alleged failure to preserve for appellate review the issue of whether the District Court abused its discretion when Petitioner's testimony was impeached

Finally, Petitioner contends that Nettles was ineffective for failing to preserve for appellate review the Court's alleged abuse of discretion in discrediting Petitioner's testimony. Specifically, Petitioner asserts that he was impeached, in part, based on his criminal record; however, Petitioner contends that because the last conviction on his record was from over a decade ago, the Court abused its discretion in permitting Petitioner's record to be used for impeachment. Petitioner thus concludes that had Nettles investigated this issue and objected, Nettles could have preserved the issue for appellate review.

Petitioner's allegations are without merit. Nettles did, in fact, object to the Government impeaching Petitioner with his criminal record, and thus the matter was preserved for appellate review. (See Doc. #210-2 at 67-71). The Court overruled Nettles' objection, finding the evidence

admissible. (<u>Id.</u>). In making its finding, the Court looked not only at the Petitioner's prior record but also at (1) the Petitioner's statement that someone at the dealership must have put the wrong date on the tag, which the Court found "a little incredible, under the circumstances"; (2) the officers' consistent statements; and (3) the Petitioner's conduct in this case in providing a false identification to the officers at the initial traffic stop. (<u>See</u> Doc. 210-2 at 102-104). Petitioner therefore fails to show conduct by defense counsel Nettles that was objectively unreasonable and prejudicial. Thus, Petitioner's claim based on these grounds is without merit.

<u>**ANALYSIS OF CLAIMS: SUPPLEMENT TO §2255 PETITION**</u>

In his supplement to his §2255 petition, Petitioner asks the Court to vacate his conviction and sentence based on the recent Supreme Court decisions <u>Alleyne v. United States</u>, 133 S.Ct. 2151 (2013) and <u>Descamps v. United States</u>, 133 S.Ct. 2276 (2013). Specifically, Petitioner relies on <u>Alleyne</u> to assert that the District Court improperly increased the Petitioner's mandatory minimum sentence by categorizing the Petitioner as an Armed Career Criminal without submitting Petitioner's prior convictions to a jury. Petitioner further asserts that under <u>Descamps</u>, two of his convictions for Breaking and Entering, and a third conviction for Preparation to Commit Burglary, do not qualify as ACCA predicates. Additionally, in his "Motion in Opposition to Summary Judgment," Petitioner alleges that he is actually innocent of the Felon in Possession conviction. (Doc. #226 at 3, 7-9). Finally, the Court notes the Government's assertion that the Petitioner procedurally defaulted these claims. For the reasons outlined below, the Court finds that none of the Petitioner's supplemental claims entitles him to relief.

**1.** *Alleyne v. U.S.*

Petitioner asserts that in light of the <u>Alleyne</u> decision, the District Court improperly increased the Petitioner's mandatory minimum sentence by categorizing the Petitioner as an

Armed Career Criminal without submitting Petitioner's prior convictions to a jury. However, Petitioner misconstrues and misreads the Supreme Court's decision in Alleyne. In Alleyne, the Supreme Court held that facts that increase a defendant's mandatory minimum sentence must be submitted to the jury or fact-finder because such facts constitute elements of the offense. However, Alleyne did not overrule Almendarez-Torres v. United States, 523 U.S. 224 (1998), which held specifically that prior convictions are sentencing factors, not elements of the offense. See also Alleyne, 133 S.Ct 2151 at 2160 n. 1 (2013). Furthermore, the Fourth Circuit has rejected arguments that prior convictions are elements of a crime that must be submitted to a jury. See United States v. Cheek, 415 F.3d 349, 351 (4th Cir. 2005) (holding, in the specific context of the Armed Career Criminal Act, 18 U.S.C. § 924(e), that the Sixth Amendment does not require "that the mere fact of a prior conviction used as a basis for a sentencing enhancement be pleaded in an indictment and submitted to a jury for proof beyond a reasonable doubt.").

Petitioner's claim is without merit. Petitioner asserts he is entitled to relief because the Court failed to submit his prior convictions to the jury. However, because prior convictions are exempted from the Alleyne decision, it offers the Petitioner no relief. Thus, Petitioner fails to show that he is entitled to relief under Alleyne, and thus his claim on these grounds is without merit.

## 2. *Descamps v. U.S.*

Next, Petitioner asserts that under Descamps, two of his convictions for Breaking and Entering, and a third conviction for Preparation to Commit Burglary, do not qualify as ACCA predicates; thus, he asserts he is entitled to relief from his prior sentence. Petitioner's argument is without merit: as noted below, the Petitioner's breaking and entering convictions count as predicates for ACCA purposes, and thus Petitioner qualifies for the enhanced penalties with or

without the conviction for Preparation to Commit Burglary. The Fourth Circuit has affirmed the designation of a North Carolina breaking and entering conviction as a violent felony. See United States v. Westmoreland, 13-4173, 2013 WL 5567889 (4th Cir. Oct. 10, 2013) (unpublished) (reaffirming that North Carolina convictions for breaking and entering are qualifying convictions for purposes of the ACCA and stating that "[t]he Supreme Court's recent decision in Descamps v. United States… does not affect our conclusion."); United States v. Thompson, 588 F.3d 197 (4th Cir. 2009); United States v. Thompson, 421 F.3d 278, 284 (4th Cir. 2005); United States v. Bowden, 975 F.2d 1080 (4th Cir. 1992). In these cases, the Fourth Circuit found that a North Carolina breaking and entering conviction specifically qualified as a violent felony under the categorical approach. In doing so, the Fourth Circuit found that North Carolina's definition of breaking and entering was consistent with the Supreme Court's definition of burglary set forth in Taylor v. United States, 495 U.S. 575 (1990). Furthermore, after a review of offense elements, Descamps held that California's burglary statute was not a crime of violence under the categorical approach. The Fourth Circuit has not applied the Descamps holding to find that North Carolina's breaking and entering or burglary statute is not a violent offense. Thus the case is inapplicable to the present issue and the Petitioner is not entitled to relief under this claim.

Furthermore, Petitioner still qualifies as an Armed Career Offender under the ACCA even without his prior breaking and entering convictions and his preparation to commit burglary conviction. Petitioner has prior convictions for common law robbery, assault with serious injury, and 1993 breaking or entering charge to which he has not raised any challenge under Descamps. (Docs. #220-1 at 6, #170). Thus, Petitioner qualifies as an Armed Career Criminal whether or not the challenged convictions qualify as violent felonies. As a result, Petitioner's contentions under Descamps are without merit.

Finally, the Court again notes that Petitioner's 204 month sentence was imposed pursuant to his Rule 11(c)(1)(C) stipulation in the plea agreement, not pursuant to the guidelines. As a result, the prior convictions and related ACCA enhancement were not relevant to the Petitioner's sentence. Thus, Petitioner's arguments are without merit.

## 3. Actual Innocence

To the extent Petitioner asserts that he is "actually innocent" of being a Felon in Possession based on Simmons, (see doc. #220 at 8), Petitioner's arguments are without merit. Petitioner appears to improperly confuse ACCA predicates with Felon in Possession predicates in presuming that he is not a felon for Felon in Possession purposes. Contrary to his assertions, Petitioner's prior convictions subject him to a conviction under 18 U.S.C. § 922(g)(1) as long as they are crimes punishable by imprisonment for a term exceeding one year. Unlike a defendant facing career offender status, a defendant may be convicted of being a felon in possession even if his prior felonies lack the violence component. See 18 U.S.C. § 922(g)(1). Simmons would only offer Petitioner relief in the case of a prior *North Carolina felony* conviction that, because it did not subject Petitioner to a potential custodial sentence of one year, did not qualify as a *federal felony*. See Simmons, 649 F.3d 237. Thus, Petitioner's prior convictions for Breaking and Entering, Preparation to Commit Burglary, Common Law Robbery, Possession of Cocaine, Assault-Serious Injury, and Failure to Stop for a Blue Light, (Doc. #170 ¶¶ 18, 19, 20, 21, 24, 27, 31, 32), would each qualify as a crime punishable by imprisonment for a term exceeding one year for felon in possession purposes. As a result, Petitioner's actual innocence assertion is without merit.

**4. Procedural Default**

The Court notes that the Government asserts that there is a procedural default issue and "relation back" issue in regard to the Petitioner's <u>Alleyne</u> and <u>Descamps</u> claims. (<u>See</u> doc. #220-1 at 3-4). However, the Court has reviewed the Petitioner's <u>Alleyne</u> and <u>Descamps</u> claims on the merits and has found that they entitle the Petitioner to no relief. Thus, the Court need not address the procedural default and relation back issues.

<b><u>CONCLUSION</u></b>

The Court has carefully considered the filings, record, and relevant law. The Court does not conclude that the record and current authority before it provides a basis for relief. Thus, for the foregoing reasons, Petitioner's petition pursuant to 28 U.S.C. § 2255, (Doc. #200), and supplemental petition pursuant to 28 U.S.C. § 2255 (Doc. #215) are **DENIED**, the Government's motion for summary judgment (Doc. #210) and renewed/amended motion for summary judgment (Doc. #220) are **GRANTED**, and this action is **DISMISSED** with prejudice.

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings. The Court concludes that it is not appropriate to issue a certificate of appealability as to the issues raised in this petition. Petitioner is advised that he may seek a certificate from the Fourth Circuit Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

s/Terry L. Wooten_____
Chief United States District Judge

December 18, 2013
Columbia, South Carolina